# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | | |
|---|---|---|
| MAINE UNIFORM RENTAL, INC. | ) | |
| D/B/A PRATT ABBOTT UNIFORM & | ) | |
| LINEN, | ) | |
| INTERVENOR PLAINTIFF | ) | |
| v. | ) | CIVIL NO. 2:15-CV-442-DBH |
| | ) | |
| M/V NOVA STAR, *in rem*, | ) | |
| | ) | |
| DEFENDANT | ) | |

# FINDINGS OF FACT AND CONCLUSIONS OF LAW

On August 24, 2016, I conducted a bench trial of Pratt Abbott Uniform & Linen ("Pratt Abbott")'s[1] claim to a maritime lien on the M/V Nova Star ("Nova Star"). I heard closing arguments the same day. The following are my findings of fact and conclusions of law. See Fed. R. Civ. P. 52.

## FINDINGS OF FACT[2]

1.    In 2013, Singapore Technologies Marine Ltd. ("ST Marine") and Quest Navigation, Inc. ("Quest") entered into a joint venture to operate a ferry service between Yarmouth, Nova Scotia and Portland, Maine.

2.    ST Marine and Quest incorporated Nova Star Cruises Ltd. in Nova Scotia to operate the ferry service. ST Marine owned ten percent of the company.

---

[1] The legal name of the plaintiff is Maine Uniform Rental, Inc. doing business as Pratt Abbott Uniform & Linen. Like the parties, I use the name "Pratt Abbott." This Pratt Abbott is not the same as Pratt Abbott retail laundry and dry cleaning; this is the industrial side of the business.
[2] At the beginning of closing argument, the lawyers for both parties agreed that I could consider the maritime context laid out in the claim of the Portland Development Corporation, a case tried the preceding day and observed by all counsel, since the evidence had not been repeated for this case.

3.     Nova Star Cruises Ltd. chartered a vessel owned by ST Marine, the M/V Nova Star, to make the crossing.

4.     Nova Star Cruises Ltd. set out making the Nova Star a ferry service that was functionally the equivalent of a hotel that cruised between Yarmouth and Portland.

5.     To equip the vessel, Nova Star Cruises Ltd. asked Pratt Abbott to supply the linens[3] for the vessel.  The General Manager of Pratt Abbott, Thomas Gridley, negotiated with Nova Star Cruises Ltd.'s CFO, Bruce Allain.

6.     Pratt Abbott, a vendor that has worked with many hotels, offered Nova Star Cruises Ltd. the option of buying the linens up front, or renting from Pratt Abbott over a specific period of time linens that Pratt Abbott purchased and owned.  In either event, Pratt Abbott would clean the linens and return them to the ship on a daily basis.

7.     To reduce its upfront expenses and to better project its weekly costs, Nova Star Cruises Ltd. opted to rent the linens from Pratt Abbott over a five-year period.

8.     Before finalizing the agreement, Nova Star Cruises Ltd. paid Pratt Abbott a $51,536.45 deposit, and Nova Star Cruises Ltd. filled out a credit application through Pratt Abbott.  Pl.'s Ex. 1.

9.     In April 2014, Pratt Abbott entered into a contract with CFO Bruce Allain and Mark Amundsen, whereby Nova Star Cruises Ltd. agreed to rent the

---

[3] I use this term broadly, as the parties did at trial, to encompass everything that Pratt Abbott provided to the Nova Star vessel, including towels, linens, carts, napkins, etc.

linens from Pratt Abbott over a five-year period.  The contract specified that

> [i]f the contract is terminated prior to the expiration date, Customer [Nova Star Cruises Ltd.] agrees to promptly purchase all merchandise that has been ordered for or put into service for the Customer at Company's [Pratt Abbott's] then current published replacement rate schedule (this agreed sale of all merchandise is in recognition of the substantial investment of the company including, but not limited to, merchandise, equipment, labor, energy, transportation and future planning).

Pl.'s Ex. 1.

10.   To meet Nova Star Cruises Ltd.'s needs under the contract, Pratt Abbott purchased upfront certain specialty items in large quantities, including specialty linen carts that could maneuver around tight spaces on the vessel, thousands of flat twin sheets, thousands of table napkins, and uniquely shaped table clothes.  To meet the needs of Nova Star Cruises Ltd.'s rental contract, Pratt Abbott also purchased new equipment that it would not normally have purchased.

11.   Under the contract, Pratt Abbott owns all of these linens and other specialty items.

12.   At the end of the 2015 season, Nova Star Cruises Ltd. asked Pratt Abbott to leave specific inventory onboard the Nova Star vessel.  Pratt Abbott did so and invoiced Nova Star Cruises Ltd. for the amount ($3,223.29) that it had requested to remain on the boat.

13.   As it turned out, Nova Star Cruises Ltd. terminated the ferry service in 2015, after just two seasons.

14.   A number of creditors seized the Nova Star through process originating in this court, asserting maritime liens against it.  Most of the claims

have been settled, and ST Marine—the owner of the vessel—posted a bond that allowed the vessel to leave the port of Portland while the remaining claims are resolved.

15.   When Pratt Abbott realized that the rental agreement was, in effect, terminated, it demanded that Nova Star Cruises Ltd. purchase all the linens, as the 2014 agreement provided.

16.   Pratt Abbott also requested that Nova Star Cruises Ltd. pay unpaid invoices for items and rental services that had previously been supplied to the ship.  The unpaid invoices total $16,187.50 for the last completed rental service and regular cleaning invoice ($12,558.21), the items that Nova Star Cruises Ltd. requested remain on the ship ($3,223.29), and specialty items that were cleaned and returned to the ship ($406).  Pl.'s Ex. 6.

17.   Nova Star Cruises Ltd. did not pay Pratt Abbott for any of these and did not respond to Pratt Abbott's demand to purchase the inventory of linens that Pratt Abbott had purchased for the Nova Star as provided in the rental agreement.

18.   That inventory is sitting in Pratt Abbott's warehouse in Westbrook, Maine.  The total replacement cost of the stored inventory under the contract is $178,023.02.  Pl.'s Ex. 2.

19.   Pratt Abbott's maritime lien claim against the Nova Star vessel is the total replacement cost of the inventory in storage and the balance of the unpaid

invoices, for a total claim of $194,510.12.

## CONCLUSIONS OF LAW

A.   This court has jurisdiction under 28 U.S.C. § 1333(1).[4]

B.   Under federal maritime law, "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner . . . has a maritime lien on the vessel." 46 U.S.C. § 31342. It "is not required to allege or prove in the action that credit was given to the vessel." Id.[5]

C.   "[P]ersons who are presumed to have authority to procure 'necessaries' to a vessel . . . include the owner, the master, 'a person entrusted with the management of the vessel at the port of supply,' or an officer or agent appointed by the owner or 'a charterer' of the vessel." Cianbro Corp. v. George H. Dean, Inc., 596 F.3d 10, 14 (1st Cir. 2010) (quoting 46 U.S.C. § 31341). I conclude that Nova Star Cruises Ltd., as charterer of the vessel Nova Star, Mark Amundsen, as President of Nova Star Cruises Ltd., and Bruce Allain, as CFO of Nova Star Cruises Ltd., had authority to procure necessaries for the ship.

D.   According to the statute, the term "necessaries" "includes repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C.

---

[4] "The district courts shall have original jurisdiction, exclusive of the courts of the States, of "(1) Any civil case of admiralty or maritime jurisdiction . . . ."

[5] The First Circuit continues to maintain that it is a "well-established precept that the requirements for the allowance of a maritime lien are strictly construed." Cianbro Corp. v. George H. Dean, Inc., 596 F.3d 10, 14 (1st Cir. 2010). Some other courts have said that the 1971 amendments to the Federal Maritime Lien Act liberalized this standard, see, e.g., Atl. & Gulf Stevedores, Inc. v. M/V Grand Loyalty, 608 F.2d 197, 201 (5th Cir. 1979) ("We view the legislative history of these sections to mandate a more liberal application than that which existed prior to the 1971 amendments to the Maritime Lien Act. Our review leads us inexorably to the conclusion that it was the intent of the Congress to make it easier and more certain for stevedores and others to protect their interest by making maritime liens available where traditional services are routinely rendered."). I follow Cianbro, but in this case the choice of standard does not affect my conclusion.

5

§ 31301(4).  But 46 U.S.C. § 31301(4) is not an exhaustive list.  Simply stated, the term "necessaries" "should be interpreted broadly in order to encourage the provision of services that will keep ships active . . . [and a lien can attach] whenever the goods or services that were provided to the vessel were necessary for its continued operation."  <u>Farrell Ocean Servs., Inc. v. United States</u>, 681 F.2d 91, 92–93 (1st Cir. 1982); <u>see</u> <u>Trico Marine Operators, Inc. v. Falcon Drilling Co.</u>, 116 F.3d 159, 162 (5th Cir. 1997) ("[N]ecessaries include most goods or services that are useful to the vessel, keep her out of danger and enable her to perform her particular function." (internal quotation marks omitted)).  I conclude that the supplies and services that Pratt Abbott provided under the contract enabled the Nova Star to run as a mobile hotel between Portland and Yarmouth and qualify as "necessaries" under 46 U.S.C. § 31301.

E.     "It has long been the law that an essential element of establishing a maritime lien is that the necessaries be either (1) physically delivered to the vessel, or (2) constructively dispatched to the vessel by the handing over of the supplies to the owner or the owner's authorized agent for use on the designated vessel."  <u>Cianbro</u>, 596 F.3d at 14-15 (citing <u>Piedmont & George's Creek Coal Co.</u> <u>v. Seaboard Fisheries Co.</u>, 254 U.S. 1, 6-7 (1920)).

F.     Because of the nature of the rotating inventory that Pratt Abbott provided the Nova Star, there were two types of delivery in this case.  First there was delivery of the rental and cleaning services that Pratt Abbott provided to the Nova Star.  Pratt Abbott owned the linens and on a daily basis it provided a service whereby it "delivered" certain linens on a temporary basis to the ship and retrieved them the next day.  I conclude that those services were delivered to the

vessel for purposes of the maritime lien requirement.  See Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd., 781 F. Supp. 975, 986 (S.D.N.Y. 1991), rev'd on other grounds, 982 F.2d 765 (2d Cir. 1992).  That supports payment of the $12,558.21 invoice for past services.  But there is a second category.  Some of the specialized items Pratt Abbott purchased remained with the ship.  In 2015, Pratt Abbott left on the ship the items that the Nova Star requested remain on the ship or be returned to the ship.  That supports payment of the $3,223.29 invoice that Nova Star Cruises Ltd. requested remain on the ship and the $406 invoice for the specialty items that were cleaned and returned to the ship and remained there.  Those physical items have also been "delivered" to the ship for purposes of the maritime lien requirement.  See Port Welcome Cruises, Inc. v. S. S. Bay Belle, 215 F. Supp. 72, 86 (D. Md.), aff'd sub nom. Humble Oil & Ref. Co. v. S. S. Bay Belle, 324 F.2d 954 (4th Cir. 1963).  The maritime lien for the services and physical items described in this paragraph is in the total amount of $16,187.50.

G.    The items that remain in Pratt Abbott's inventory in Westbrook have not been "delivered" to the ship in such a way as to create a maritime lien.  Pratt Abbott continues to own them, and any previous movement of these items to and from the ship was simply the rental and cleaning service provided under the rental contract.  Pratt Abbott may have a breach of contract claim against the charterer Nova Star Cruises Ltd. for failing to purchase the inventory at the replacement cost rate once it terminated the contract, but that is not the same as a maritime lien claim against the vessel for necessaries furnished to the vessel.  The Westbrook inventory has not been "physically delivered to the vessel

7

or constructively dispatched to the vessel by the handing over of the supplies to the owner or the owner's authorized agent for use on the designated vessel," and thus Pratt Abbott cannot assert a maritime lien against the vessel for the replacement cost of the inventory. Moreover, Pratt Abbott cannot assert a maritime lien for rental services that it did not actually provide to the vessel. The lien extends to the period during which the rental items were actually necessaries but does not include the period after the arrest, when the rental items were no longer being used by the Nova Star. Itel Containers, 781 F. Supp. at 986-87, rev'd on other grounds, 982 F.2d 765 (2d Cir. 1992); see Dresdner Bank AG v. M/V Olympia Voyager, 465 F.3d 1267, 1272-75 (11th Cir. 2006) (holding that for value of ongoing insurance, "the vessel's arrest stopped the lien's accrual"; thus, the maritime lien was limited to the value of the insurance pre-arrest).

H.    A lienor need not prove that it relied on the credit of the vessel in providing necessaries. See Racal Survey U.S.A., Inc. v. M/V Count Fleet, 231 F.3d 183, 189 (5th Cir. 2000) ("[T]he [Federal Maritime Lien Act] . . . create[s] a presumption of credit based on the vessel."). However, the Federal Maritime Lien Act

> did not do away with the "idea of credit to the vessel being a prerequisite to a lien . . . ." Because under the [Federal Maritime Lien Act] a presumption arises that one providing supplies to a vessel acquires a maritime lien, the party attacking the presumption must establish that the personal credit of the owner or the charterer was solely relied upon. "To meet this burden, evidence must be produced that would permit the inference that the supplier purposefully intended to forego the lien."

Id. (citations omitted) (quoting Equilease Corp. v. M/V Sampson, 793 F.2d 598,

605-06 (5th Cir. 1986)).  The only evidence in the record that Pratt Abbott waived its claim to a maritime lien and instead relied solely on the personal credit of the charterer Nova Star Cruises Ltd. is the credit application listing Nova Star Cruises Ltd. and its ownership.  I conclude that this evidence is insufficient—by any standard of proof—to overcome the presumption that Pratt Abbott relied upon the credit of the vessel and thus did not purposefully forego a maritime lien.

The Clerk shall enter **JUDGMENT** for the intervenor plaintiff Pratt Abbott in the amount of $16,187.50.[6]

**SO ORDERED.**

**DATED THIS 7TH DAY OF SEPTEMBER, 2016**

/s/ D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[6] I have not relied upon the testimony that I allowed de bene over Nova Star's objection.

9