***UNITED STATES DISTRICT COURT***
***DISTRICT OF MAINE***

| | | |
|---|---|---|
| ***CENTURY RESORTS INTERNATIONAL LTD.,*** | ***)*** | |
| | ***)*** | |
| ***Claimant*** | ***)*** | |
| ***v.*** | ***)*** | ***No. 2:15-cv-00442-DBH*** |
| | ***)*** | |
| ***M/V NOVA STAR, in rem,*** | ***)*** | |
| | ***)*** | |
| ***Defendant*** | ***)*** | |

## *MEMORANDUM DECISION AND ORDER ON CROSS-MOTIONS REGARDING TAXATION OF CUSTODIAL CHARGES TO CLAIMANT*

On October 30, 2015, at the request of now-terminated plaintiff Portland Pilots, Inc. ("Portland Pilots"), the court issued a warrant for the arrest of defendant vessel M/V Nova Star ("the vessel") and placed her in the care of substitute custodian National Maritime Services ("NMS"). *See* ECF Nos. 10, 12. The vessel remained under arrest, in the care of NMS, until November 30, 2015, when the court issued an order, without objection, vacating all warrants for her arrest and discharging the substitute custodian effective at midnight that day. *See* ECF No. 149.

Presently before the court is the motion of the vessel's owners, Singapore Technologies Marine Ltd. ("Owners"), to tax all custodial charges for the period after November 25, 2015, to claimant Century Resorts International LTD. ("Century") on the basis that the vessel was detained after that time solely for Century's convenience. *See* Motion To Tax or Otherwise Allocate Custodial Charges to Century Resorts ("Owners' Motion") (ECF No. 165).[1] Century objects,

[1] On the first page of their motion, the Owners state that they seek taxation of custodial charges to Century "*from and after* November 25, 2015." Owners' Motion at 1 (emphasis added). They clarify in their conclusion that they seek to tax Century with such charges for "the period *after* Wednesday, November 25, 2015." *Id*. at 4 (emphasis added).

arguing that the court should deny the Owners' Motion or assess at most nominal custodial charges. *See* [Motion To Dismiss] ("Century's Motion") (ECF No. 145) (incorporated within Century Resorts International LTD.'s Status Update ("Status Update") (ECF No. 137)); Response to Singapore Technologies Ltd.'s Motion To Tax Costs ("Century's Response") (ECF No. 279) at 1-2, 8.[2]

For the reasons that follow, I grant the Owners' cross-motion and deny that of Century, taxing 100 percent of all custodial charges for the five-day period from November 26-30, 2015, to Century.

## I. Applicable Legal Standard

"It is well established that admiralty courts may award storage charges on equitable grounds." *Mullane v. Chambers*, 438 F.3d 132, 138 (1st Cir. 2006) (citations omitted). "The district court has wide discretion in determining whether equitable relief in admiralty cases is appropriate." *Id*. (citations omitted).

## II. Factual Background

On November 11, 2015, Century filed a combined statement of right or interest in seized property and motion to remove seized property. *See* Verified Statement of Right or Interest in Seized Property and Motion To Remove Seized Property (ECF No. 41) at 1. It explained that it sought to retrieve from the vessel property that it had supplied pursuant to a contract with vessel operator Nova Star Cruises Ltd., including casino gaming equipment, a surveillance system, and office furniture. *See id.* ¶¶ 2, 6-10. Two days later, the Owners filed their verified statement of

---

Regardless, I would not tax such charges for November 25, 2015: even absent Century's objection to the vessel's release, she would not have been released prior to midnight that day.

[2] In its November 30, 2015, status update, Century stated that it requested to be dismissed from this action, noting in relevant part that, although it understood that the Owners contended that it should bear certain custodial costs, it strenuously disagreed. *See generally* Status Update. The Clerk's Office understandably styled this as a Motion To Dismiss. *See* ECF No. 145. However, in substance, it is a motion for protection from taxation of custodial charges, and I treat it as such.

right or interest for purposes of defending the instant action and seeking release of the vessel. *See* ECF No. 52. A number of other entities and individuals either intervened as plaintiffs or filed claims seeking to recover monies assertedly owed in connection with the vessel's operation. *See, e.g.,* ECF Nos. 18, 20, 33, 35-36, 64-66, 68, 81, 99, 120.

On November 17, 2015, the Owners filed a motion to extend their deadlines to answer the plaintiff's complaint and to respond to or answer all other pending motions and lien claims, explaining that they intended to post a special bond to secure release of the vessel and negotiate the settlement of some or all lien claims. *See* ECF No. 67. On the same day, Edward MacColl, an attorney for the Owners, emailed Evelyn Levine, an attorney for Century, stating:

> The ship owners would like to discuss with your client the possibility of leasing the equipment on an ongoing basis. We are hoping to bond off all claims and secure the release of the vessel within the next week. With whom should the vessel owners speak concerning a potential lease for the equipment?

Exh. A (ECF No. 280-1) to Owners' Response. Attorney Levine replied:

> We have spoken with our client. They do not want to enter into a lease agreement. They want their property back immediately.

*Id*.

Further negotiations ensued. On November 19, 2015, David Bischoff, an attorney for Century, emailed John Bass, an attorney for the Owners:

> This follows our recent telephone conversations relating to a method pursuant to which Century Resorts may offload its property located onboard the Nova Star. As we have discussed, Century Resorts is unable to commence such an offload until November 29th; they expect the offload to require one to two days to complete. While I understand that your client is not willing to commit to hold the vessel through the November 29th to December 1st timeline that Century Resorts will require to offload its property, I appreciate and would like to continue our discussions about possible solutions to the problem. For example, I would like to discuss terms of an agreement whereby your client would ensure that my client was afforded access to the vessel to remove its property even if the vessel is released prior to November 29th. Similarly, I would like to discuss your client's intentions with respect to obtaining a replacement charter, its route, etc. so that we may be

> able to enter into an agreement whereby Century Resorts may offload its property in a port on the vessel's new route. I look forward to continuing these discussions about the aforementioned and any other possible solutions to this problem.

Exh. B (ECF No. 280-2) to Owners' Response.

The following day, November 20, 2015, Century filed a motion for a prompt hearing on its verified statement of interest/motion to remove property, stating that it understood that the Owners' posting of a special bond for any unresolved plaintiff liens and the release of the vessel from custody was imminent, yet it had not been able to offload its property. *See* ECF No. 82 at 3-4. It explained that its casino property was "highly regulated and delicate" and could only be removed by its authorized personnel, not a local moving company. *Id*. at 3.

Century stated that it had obtained the agreement of all plaintiffs and the Owners to offload its property and had lined up authorized personnel to travel across the country to Maine to commence offloading on November 29, 2015, but that the Owners would not agree to that time frame, given their efforts to secure the vessel's release by then. *See id*. at 3-4. Century represented that it had made an effort that day (November 20) to compromise by reaching out to its European personnel and requesting that they travel and supervise the unloading of the property commencing early the following week (the week of November 23, 2015), but that, while the Owners "seemed agreeable to an earlier date to unload the property," they had "informed Century at this eleventh hour of negotiations that the Vessel will no longer be physically available at the port for offloading due to a separate conflict [they had] not resolved with the City of Portland, as a result of which the City of Portland is no longer allowing the Vessel to tie up at the City's pier." *Id*. at 4.

Century stated that it understood that the vessel was being set to anchor in Portland's inner harbor, preventing Century from accessing its property despite everyone's agreement. *See id*. It added, "If the City were to allow the Vessel to tie up briefly at its pier while Century's personnel

are on site to offload Century's property, matters would be resolved to Century's satisfaction, and apparently in a way that is acceptable to all other parties." *Id*.

Century appended a declaration of Margaret Stapleton, its executive vice-president of finance, averring, "Century was prepared to have its personnel present to conduct offloading activities during the week of November 23, 2015, provided they were advised today that they had access to the Vessel, which would have allowed them to make travel plans." Verifying Declaration (ECF No. 83) ¶ 8.

On November 23, 2015, Portland Pilots filed a motion to release the vessel and approve custodial fees and to expedite the deadline for any objections. *See* ECF No. 87. On November 24, 2015, Century objected, for the reasons stated in its motion for a prompt hearing. *See* ECF No. 105. On the same day, the Owners joined in Portland Pilots' request, contending that Century's objection was without merit. *See* ECF No. 107. They stated that Century had mistakenly asserted that the vessel had been moved as a result of a dispute between the City of Portland and the Owners; that they (the Owners) were aware of no such dispute; and that the substitute custodian, not the Owners, was in control of berthing arrangements. *See id*. at 1-2. They maintained that Century had had ample opportunity to remove its property, all parties having consented to the removal – a significant concession, in the Owners' view, because Century's property was affixed to the vessel and, hence, possibly subject to the maritime liens asserted in this action. *See id*. at 2.

On November 25, 2015, the day before Thanksgiving, the Owners filed a motion to substitute a bond for the vessel and for an emergency hearing on the motion. *See* ECF No. 108. The court ordered that responses to all pending motions, including ECF No. 108, be filed by 2:00 p.m. that day. *See* notations on ECF Docket dated November 25, 2015. Century alone objected to the vessel's release, arguing that, although Century remained "in active discussions with the

Owners about a possible negotiated resolution that may obviate the need for offloading the Property altogether[,]" the Owners had "not provided any assured access to the vessel and Century's property upon release of the vessel." ECF No. 115 at 2. Century again represented that its efforts to offload its property as early as November 23 "had to be abandoned because the vessel would be forced to anchorage due to a dispute between the City of Portland and the vessel owners[.]" *Id*. at 1-2. The court that day issued an order granting Century's and the Owners' motions for an emergency hearing "[i]n view of the objection filed by [Century] to the [Owners' motion] to substitute a bond for the vessel[.]" ECF No. 117. It set a hearing on all pending motions for November 30, 2015, the Monday after Thanksgiving. *See id*.

On November 27, 2015, the day after Thanksgiving, the Owners filed an emergency motion to authorize NMS, the substitute custodian, to permit Century to remove its equipment. *See* ECF No. 121. Century joined in that motion, *see* ECF No. 123, which the court promptly granted that day, *see* ECF No. 124.

On November 29, 2015, a Sunday, the Owners filed a reply in support of their motion to substitute a bond for the vessel, again denying that the vessel was unavailable during the week of November 23 due to a dispute between themselves and the City of Portland. *See* ECF No. 131 at 2-3.

On November 30, 2015, Century filed its status report, stating that, during the period from November 27 through November 29, it had successfully removed its property from the vessel and no longer objected to her release. Status Update at 2. However, it noted that it "strenuously oppose[d]" the Owners' expected bid to tax any custodial costs to it. *Id.* at 1-2.

During the November 30, 2015, hearing, the Owners withdrew one pending motion without prejudice, ECF No. 102, a motion to set conditions for bonds by the claimants, and the court ruled

on the remaining five, granting ECF No. 67, the Owners' motion to extend time, ECF No. 85, the joint motion of the Owners and World Fuel Services, Inc. ("WFS") to dismiss WFS's complaint with prejudice, ECF No. 87, Portland Pilots' motion to approve the release of the vessel and custodial fees, and ECF No. 108, the Owners' motion to substitute a bond for the vessel, and declaring moot ECF No. 113, an emergency joint motion by the City of Portland and the Portland Development Corporation ("PDC") to appoint NMS as substitute custodian. *See* ECF Nos. 147-50.[3]

On December 11, 2015, the Owners filed their motion to tax costs to Century. *See* Owners' Motion. I granted a series of motions by the parties to enlarge their response and reply deadlines to enable them to engage in settlement discussions. *See* ECF No. 278. On August 12, 2016, I granted a similar such motion only in part, noting that, while I had extended briefing deadlines on the cross-motions multiple times to facilitate the parties' ongoing settlement negotiations, the motions needed to be decided absent the successful conclusion of those negotiations. *See id.* I reset briefing deadlines, *see id*., and the matter is now fully briefed.

**III. Discussion**

The Owners seek to tax all custodial costs for the period from November 26-30, 2015, to Century on the basis that, as of November 25, 2015, only Century resisted the Owners' efforts to post a bond and secure the vessel's release, and it did so for its own convenience in circumstances in which it could have resolved the issue of its seized property by that date. *See* Owners' Motion at 1-2.

---

[3] In their emergency joint motion, filed on November 25, 2015, the City of Portland and the PDC explained that they had filed the motion as a precaution because the original arresting plaintiff, Portland Pilots, had settled its claim against the vessel and had filed a motion seeking her release; however, they preferred that the court approve the bond proposed by the Owners, obviating the need to keep the vessel under arrest. *See* ECF No. 113 at [2]-[4].

The Owners note that, (i) on November 17, 2015, Century spurned their offer to lease the equipment, instead demanding its immediate return, (ii) on November 19, 2015, Century informed them that it was unable to commence an offload of its property until November 29, 2015, suggesting that if the arrest did not last that long, alternative arrangements could be made for the removal of the equipment in another port, (iii) in the meantime, all parties consented to the removal of Century's property, (iv) Century mistakenly asserted that it was unable to arrange for an offload during the week of November 23, 2015, because of a dispute between the City of Portland and the Owners, although there was no such dispute and the vessel's movements were controlled by NMS, the substitute custodian, and, (v) although counsel for the Owners suggested that Century could make arrangements at its expense to bring the vessel into a suitable facility in Portland Harbor to offload its property, Century made no such arrangements. *See id*. at 2-3; Reply of Owners in Support of Motion To Tax or Otherwise Allocate Custodial Charges to Century Resorts ("Owners' Reply") (ECF No. 290) at 1.

The Owners argue that, because Century never contended that it was itself entitled to arrest the vessel but used the arrest process to prolong the detention of the vessel for its convenience, it should be taxed as an equitable matter with all resulting custodial charges. *See* Owners' Motion at 4; Owners' Reply at 2-3.

Century rejoins that, promptly after filing its statement of verified interest and incorporated motion on November 11, 2015, it worked diligently to secure the consent of all parties to offload its property and was forced to abandon its prearranged travel plans for retrieval of the property when counsel for the Owners advised that the vessel was expected to depart Portland Harbor upon her release, and her destination thereafter was unknown. *See* Century's Response at 2-4. Century notes that, when it learned on November 26, 2015, that the vessel would be brought to port, it made

extraordinary efforts to assemble and fly a crew to Portland over the post-Thanksgiving weekend, successfully completing the property offload as of November 29, 2015. *See id.* at 5-6.

Century argues that its objection to the release of the vessel was not the sole cause of her continued detention, as the court scheduled several motions for hearing on November 30, 2015. *See id*. at 7. It asserts that, considering the totality of the circumstances, it could not have accomplished the removal of its property any sooner, and the retrieval was hardly at its "convenience." *Id*. at 8. It contends that the Owners' request to tax it with the entirety of costs of custody after November 25, 2015, is unreasonable, that principles of equity require that it be assessed a nominal fee at most, and that in no event are the Owners entitled to more than their actual custodial costs. *See id*.

For the reasons that follow, I conclude that the equities favor the taxation of all custodial costs for the five-day period between November 26 and 30, 2015, to Century. There is no question that Century made diligent efforts to remove its property from the vessel in difficult circumstances that included the need to arrange for its own personnel to effectuate the removal of its specialized and delicate equipment, the need to obtain consent from multiple parties to the removal of that equipment, the timing of the Thanksgiving holiday, and the need to arrange for the berthing of a vessel that, as the Owners assert, was in the control of a substitute custodian, NMS. *See* ECF No. 10.

Yet, the Owners are correct that the detention of the vessel was prolonged from November 26, 2015, through November 30, 2015, solely because of Century's objection, as is reflected in the court's order setting the November 30 hearing. *See* ECF No. 117. While the court acted on all pending motions during that hearing, it did so as a matter of convenience, once Century's objection to the vessel's release necessitated an emergency hearing.

Century's inability to remove its property, or otherwise negotiate a solution to its problem, by November 25, 2015, cannot be laid at the feet of the Owners. The Owners offered to lease the property aboard the vessel, but Century declined. *See* Exh. A to ECF No. 280. The Owners state, and Century does not dispute, that they suggested that arrangements could be made (at Century's expense) for the vessel to tie up to a suitable facility in Portland Harbor, but nothing came of that. *See* Owners' Motion at 3; *see generally* Century's Response.

In its responsive brief, Century no longer claims that it had to scuttle arrangements to remove its property during the week of November 23, 2015, as a result of a dispute between the Owners and the City of Portland. *See generally* Century's Response. However, even when it did raise that argument prior to the vessel's release, it asserted that the *City of Portland* had blocked access to the pier. *See* ECF No. 82 at 4. It is unclear why Century was unable to access the vessel during the week of November 23, 2015; however, there is no evidence that the Owners did anything to bring about that unfortunate state of affairs.

Century does note, and the Owners do not dispute, that, following the vessel's release from arrest on November 30, 2015, she remained moored at Portland Harbor until December 9, 2015. *See* Century's Response at 6-8; *see generally* Owners' Reply. Yet, there is no suggestion that the Owners or their counsel knew, when they informed Century prior to November 26, 2015, that they could provide no assurance of access to the vessel following her release, that she would remain in Portland Harbor.

In the totality of the circumstances, I conclude that the vessel remained under arrest for the period after November 25, 2015, for Century's convenience and that, as a matter of equity, Century should be taxed the costs of her continued custodial detention after that date.

A further matter remains: In their response to Century's cross-motion, the Owners state that they are considering a separate action against Century for damages beyond taxable custodial costs. *See* Owners' Response at 1. Accordingly, they object to Century's dismissal or, in the alternative, request that Century be dismissed with costs and without prejudice to the Owners' right to assert further claims against it. *See id*. Century takes the position that in no event are the Owners entitled to more than actual custodial costs. *See* Century's Response at 8. I need not resolve this point: as noted above, I have treated Century's cross-motion as a motion for protection from taxation of custodial charges. However, as set forth below, I do direct that the parties meet and confer concerning it.

## IV. Conclusion

For the foregoing reasons, I **GRANT** the Owners' cross-motion and **DENY** that of Century, taxing 100 percent of all custodial charges for the five-day period from November 26-30, 2015, to Century. Because the Owners have not quantified that sum, I **DIRECT** the parties to meet and confer regarding that matter and to file on CM-ECF, no later than October 17, 2016, a joint report either that they have agreed on a specific sum or that there is a disagreement, in which event they shall explain the basis for the disagreement. I further **DIRECT** the parties to meet and confer regarding the Owners' request that, if Century is dismissed from the case, its dismissal be without prejudice to further claims against it by the Owners, following which Century may file a motion to dismiss itself from this case, with or without the Owners' consent.

## ***NOTICE***

***In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.***

***Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.***

Dated this 28th day of September, 2016.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge