# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| PORTLAND PILOTS, INC., ET AL., | ) |
|---|---|
| PLAINTIFFS | ) |
| v. | ) CIVIL NO. 2:15-CV-442-DBH |
| M/V NOVA STAR *in rem*, ET AL., | ) |
| DEFENDANTS | ) |

## ORDER ON MOTION TO APPORTION CUSTODIAL COSTS

This dispute is over the allocation of custodial expenses while a vessel was under arrest in Portland harbor before it was released in exchange for a bond from the owner. The owner settled all but two claims against the vessel. After a bench trial, I awarded judgment against one claimant and awarded the other claimant a small portion of what it claimed, a decision affirmed on appeal. Portland Pilots, Inc. v. NOVA STAR M/V, 875 F.3d 38 (1st Cir. 2017). The owner now seeks to have these two claimants pay a "fair share" of the custodial expenses accrued by the vessel during its arrest. Both claimants argue that they should pay nothing, largely[1] on arguments of waiver. None of the parties has requested a hearing. I conclude that the two claimants should share in some of

---

[1] One of the claimants, Portland Development Corp. (PDC), argues that there is no authority or equitable basis for assigning costs to non-intervening parties. PDC's Response 3 (ECF No. 351). Even if this were correct (which is dubious), PDC *did* intervene. Order (ECF No. 101) (granting PDC's motion to intervene).

the custodial expenses and announce applicable principles, but I do not have the necessary evidence to order specific dollar amounts.

**FACTS**

On October 30, 2015 Portland Pilots, Inc. (Portland Pilots) filed a verified complaint *in rem* against the M/V Nova Star (the vessel) seeking, among other things, to have it arrested. Pilot's Compl. (ECF No. 1). The M/V Nova Star had been operated as a ferry service between Portland Maine and Yarmouth Nova Scotia. The United States Marshal arrested the vessel that same day and, on Portland Pilots' motion, it was placed under the care of substitute custodian National Maritime Services (NMS). Warrant in Rem (ECF No. 12); Order Appointing Substitute Custodian (ECF No. 10). The vessel remained in the custody of NMS until it was released on November 30, 2015. Oral Order Releasing Vessel (ECF No. 148).

After appearing on November 13, 2015, see Verified Statement of Right (ECF No. 52), the vessel's Owner paid the custodial expenses. Ultimately the Owner settled with Portland Pilots and others claiming against the vessel, as a result of which it no longer has a claim against those parties for their pro rata share of custodial expenses. Owners' Renewed Mot. 2 (ECF No. 349). The Owner was unable to settle with two parties: Portland Development Corp. (PDC) and Maine Uniform, Inc. (MUR).

Lawyers for PDC first entered their appearance in the action on November 6, 2015. Notices (ECF Nos. 28-29). PDC filed its Verified Claim on November 9 (ECF No. 36), claiming a lien for $151,398.68 and interest, attorney fees, and costs, but did not move to intervene until November 23. Emergency

Mot. (ECF No. 88). MUR first appeared in the lawsuit on November 17, when it filed a Motion to Intervene (ECF No. 64) claiming a lien of $262,001.50 and interest, attorney fees, and costs.

Both claimants' motions to intervene were granted on November 24. Orders (ECF Nos. 90, 101). They filed intervenor complaints the same day, reflecting the amounts I have already listed (for MUR, see Compl. ¶¶ 18, 24, 29 (ECF No. 99); for PDC, see Compl. ¶ 19 (ECF No. 103)). PDC also moved to arrest the vessel, Emergency Mot. (ECF No. 96); Order for Arrest (ECF No. 110), but ultimately did not execute the arrest. Both parties supported the release of the vessel on a substitute bond on November 25. Responses (ECF Nos. 112, 116).

## ANALYSIS

### *Waiver*

I reject both claimants' arguments that the Owner waived any claim for allocation of custodial expenses against them. The Owner made clear at the November 30, 2015 hearing (principally on the bond substitution) that it was not waiving the allocation of costs as against PDC and MUR. Tr. of Proceedings (11/30/15) at 17-18, 23-24 (ECF No. 337). The December 14 hearing focused on other parties, but Magistrate Judge Rich clearly stated then that the allocation issue remained. Tr. of Proceedings (12/14/15) at 31 (ECF No. 336). It is true that MUR stated that its consent to release of the vessel on November 25 (ECF No. 116) was contingent on its having no liability for arrest costs. But the record does not reflect that the Owner (or any other party) accepted that condition, and arguably it was directed only at World Fuel Services (WFS). See MUR's Status Update (ECF No. 135) (stating the condition as a requirement for

3

WFS's dismissal from the case); Tr. (11/30) at 30-31 (ECF No. 337) (MUR's lawyer stating that his concern was WFS and it was resolved). MUR made no reference to the issue in its "Issues Update" filed December 10 (ECF No. 160). The Owner's "Issues Update" filed December 11 (ECF No. 162), says that it will seek to allocate custodial charges to Century Resorts International LTD (Century) after November 25; it also says that the PDC's and MUR's claims present "similar issues," albeit without further specificity. On that record, there is no basis to conclude that the Owner waived its argument that these claimants should participate in the custodial expenses.

***Allocation***

Allocating custodial costs is based upon general principles of fairness, and is clearly committed to the discretion of the trial court. See Mullane v. Chambers, 438 F.3d 132, 138 (1st Cir. 2006) (admiralty courts have "flexible and equitable" authority to award custodial expenses (citing The Poznan, 274 U.S. 117, 120-23 (1927)); accord Beauregard, Inc. v. Sword Servs. LLC, 107 F.3d 351, 354 (5th Cir. 1997) ("[T]he district court enjoys broad equitable authority over the administration of maritime seizures."); Donald D. Forsht Assocs., Inc. v. Transamerica ICS, Inc., 821 F.2d 1556, 1559-60 (11th Cir. 1987) (lienholders and claimants in *in rem* action potentially liable for "proportionate share" of custodial costs).

In this case, the Owner has proposed no standard for allocation other than a "fair share," Reply to PDC 7 (ECF No. 353); Reply to MUR 6 (ECF No. 355); the claimants have proposed no standard at all, arguing only that they should pay

4

nothing. Nevertheless, certain principles have been established by Judge Rich's earlier rulings in this long-running case.

First, Judge Rich ruled that all custodial charges for the arrest period after November 25, 2015, until the vessel's release on November 30, 2015, were the sole responsibility of Century. Century, unlike all other claimants, refused to let the vessel be released in exchange for the Owner's bond on November 25. Order on Costs to Century (ECF No. 296). (Century had casino equipment on board the vessel that it first wanted unloaded in accordance with specified procedures, delaying the release.) I conclude therefore that these two claimants have no responsibility for custodial costs during that period. (After Judge Rich's ruling, the Owner and Century resolved their dispute in its entirety and the custodial costs for that period are therefore the Owner's responsibility.)

Second, soon after the vessel was first arrested on October 30, 2015 (and before these two claimants or the Owner had appeared in the case), Judge Rich entered an Order Allocating Custodial Costs (ECF No. 51) between the seizing entity, Portland Pilots, and the fuel provider, World Fuel Services "pro rata, by amount of the maritime lien pleaded" "over the aggregate of those liens" and accruing "from the date each party's complaint is docketed."[2] WFS had agreed to share custodial costs, and Judge Rich had earlier expressed concern about issuing an order that affected future intervenors before they had an opportunity

---

[2] Judge Rich's Allocation Order also approved the Marshal's plan to divide its insurance premium costs equally between Portland Pilots and WFS "and to further divide and allocate the premium as additional intervenors may appear before the court." Id. Any Marshal's insurance premium costs therefore should be divided equally as among all claimants and not according to the pro rata lien method.

to be heard, Report of Hearing (ECF No. 47), but the Order applies fair principles for allocation[3] and I see no reason to deviate significantly from those principles at this point of the litigation,[4] and the parties have presented none. (Obviously the two claimants now have had an opportunity to be heard.)

I conclude that the applicable dates for these claimants are, respectively: November 9, when Portland Development Corp. filed its verified claim (ECF No. 36), claiming a lien on the vessel for $151,398.68 and interest accruing at $20.72 per day from November 3; and November 17, when Maine Uniform Rental moved to intervene claiming a lien on the vessel for $262,001.50 plus interest (ECF No. 64). There were of course a number of other claimants who appeared on varying dates asserting claims in different amounts. The Owner has settled with all of them, and their respective shares of the custodial expenses should not be

---

[3] The circuit courts have upheld equal allocation of costs per capita. Beauregard, 107 F.3d at 352 n.1, 353-54 (reasonable to condition intervention on equal allocation); Lloyds v. Kenco Marine Terminal, Inc., 81 F.3d 871, 873 (9th Cir. 1996); see also Forsht, 821 F.2d at 1562 (noting nineteenth century precedents for this). The Fifth Circuit has noted that per capita shares may be unreasonable where there is a great disparity in the size of intervenors' claims, and that allocation by proportional claim size would be more appropriate in such cases. Beauregard, 107 F.3d at 353 n.8. Among Districts that have Local Rules on admiralty seizures (Maine does not), some provide (absent agreement by counsel) for allocation pro rata according to the amount of the claim without reference to the date it was made. See, e.g., S.D. Ala. Civ. L.R. 104(k)(2); M.D. Fla. R. 7.05(f)(2); N.D. Fla. R. E(5)(b); S.D. Fla. R. E(5)(b). Others provide no criteria. See, e.g., D. Md. LAR(e)(10)(b); E.D. Mo. R. 9 – 10.03(F)(2) ("[A]s justice may require."); S.D. Cal. Civ. R. E.1(c)(2). I have not conducted an exhaustive survey of local rules or admiralty decisions (the parties have not directed me to any that specifically address methods of allocation), but nothing about using a temporal component in cost allocation (as Judge Rich did) is unfair or incompatible with the rationales for cost sharing. See Forsht, 821 F.2d at 1561-62 (noting the rationales). Given this, the best reason to continue using a temporal component is its prior use in this litigation; costs have already been allocated on this basis, and I see no reason to change the principle.

[4] Judge Rich's Allocation Order (ECF No. 51) says costs accrue "from the date each party's complaint is docketed," referring to Portland Pilots' initial complaint and, presumably, WFS's intervenor complaint, although this is somewhat ambiguous (WFS's motion to intervene contained a proposed complaint, ECF No. 13-1). He later assigned custodial costs to Century, which never formally intervened or filed an intervenor complaint, but did file a Verified Statement of Right (ECF No. 41). As appears below, for PDC and MUR I use the dates they first asserted maritime liens, not the later date they filed intervenor complaints.

included in what these two claimants must pay. I leave it to the Owner and the two remaining claimants to do the math concerning the claim amounts, the time periods, and the resulting pro rata dollar allocations here, remembering that the custodial expenses after November 25 should not be included because they were solely Century's obligation and that the Marshal's insurance premiums should be treated as divided equally among all claimants.

At the end of the day, I cannot on the record before me enter an Order that specifies dollar amounts of allocation. But the parties should be able to resolve the dispute among themselves based upon the principles I have enunciated. They shall notify the Clerk's office by May 14, 2018, that they have resolved it, or specify what matters they cannot resolve.[5]

**SO ORDERED.**

**DATED THIS 12TH DAY OF APRIL, 2018**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[5] The First Circuit has said that "[t]here is no pro forma requirement that, in each and every case, a district court hold an evidentiary hearing prior to awarding custodia legis expense." Lubricantes Venoco, Int'l, C.A. v. M/V NEVERIS, 60 F. App'x 835, 841 (1st Cir. 2003). I therefore reserve judgment on whether to hold an evidentiary hearing depending on the nature of any remaining dispute.